```
              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON
```

**LARRY LINVILLE**

    Plaintiff

v.                                                Civil Action No.: 2:05-0104

**UNITED AUTO WORKERS OF AMERICA,
LOCAL 3399 and KENNETH MARCUM,**
individually and in his capacity
as President of said local union

    Defendants

<u>MEMORANDUM OPINION AND ORDER</u>

Pending before the court is defendants' motion, filed October 6, 2005, seeking dismissal and/or summary judgment on plaintiff's claims.[1]

I.

According to the allegations in his complaint, prior to

---

[1] While Linville did not attach exhibits to his response to this motion in an attempt to raise questions of fact or to support his factual assertions, Linville's recitation of the facts in his "memorandum in opposition to defendants' motion to dismiss and/or for summary judgment," reveals the relevant facts that relate to the issues raised by defendants' motion are undisputed.  As evidenced by his response, Linville only disputes defendants' application of the law to the relevant facts. Accordingly, the court will treat defendants' motion as a motion for summary judgment.

September 1, 2000, plaintiff Larry Linville was an hourly employee of Mayflower Vehicle Systems ("Mayflower").  (Compl. ¶ 4.)  Linville worked in Mayflower's maintenance department and was a member of the defendant union, United Auto Workers of America, Local 3399 ("union").  On or around September 1, 2000, Linville was approached by a member of Mayflower's management and offered a salaried supervisory position.  (Id. ¶¶ 5,6.)  The offer was made with the understanding that Linville would first resign his hourly position in the maintenance department and would then be called back to take the salaried position.  (Id. ¶ 6.)  Linville contends that members of the union were aware of this arrangement. (Pl.'s Resp. Memo. 1)

In accordance with the understanding, on September 1, 2000, Linville resigned his position; however, Mayflower did not call Linville back in a supervisory position. (Compl. ¶ 7.) After waiting six weeks to hear from Mayflower, Linville contacted Mayflower's human resources director and was advised that his only option was to return as a "new hire." (Id.)  On October 17, 2000, Linville returned to work as a "new hire" in the manufacturing department instead of the maintenance department where he worked prior to his resignation.  (Id. ¶ 7; Pl.'s Resp. 2.)  Accordingly,  Linville lost the seniority he had

accumulated in his original position with the maintenance department. (Compl. ¶ 8.) Linville subsequently retained counsel who sought reinstatement of his seniority and, in October of 2002, Mayflower advised Linville that his seniority had been reinstated. (Defs.' Memo. 3; Linville Grievance, attached as Ex. 6 to Defs.' Memo.) Shortly thereafter, Mayflower informed Linville that the union objected to the reinstatement of his seniority, and, pursuant to union rules, his seniority would not be reinstated. (Compl. ¶ 10; Pl.'s Resp. Memo. 2.)

The union does not dispute that it objected to the reinstatement of Linville's seniority. (Defs.' Memo. 3.) In support of its decision to oppose reinstatement of Linville's seniority, the union provided documentation it received from Mayflower indicating that on September 1, 2000, Linville had quit and on October 17, 2000, had been rehired. (Personnel Status Forms, attached as Exs. 8, 9 to Defs.' Memo.) The union asserts that its decision to oppose reinstatement of Linville's seniority was based on Article 6.3 of the collective bargaining agreement ("CBA"), which provides that an employee shall lose his/her seniority if he/she quits. (Defs.' Memo. 2-3; CBA, p. 13, attached as Ex. 5 to Defs.' Memo.) The union further contends that to have agreed with the reinstatement of Linville's

seniority rights would have prejudiced the seniority rights of other employees who moved ahead of Linville on the seniority roster when he quit his employment.  (Aff. of Ronnie Herdman, ¶ 6, attached as Ex. 14. to Defs.' Memo.)

Linville disagreed with the union's position, and, on March 6, 2003, filed a grievance against both the union and Mayflower.  (Employee Grievance, attached as Ex. 7 to Defs.' Memo.)  The grievance alleged that the union discriminated against Linville and the "company was wrong by reversing its decision." (Id.)  In support, Linville asserted that co-workers had accepted promotions and then returned "without any hassell [sic] from their union." (Id.)  The grievance was denied by the international union at step three on April 20, 2003, and, by letter dated June 18, 2003, Linville was advised in writing that his grievance would not be pursued by the union.  (Defs.' Memo. 4.)  However, from April 20, 2003, to October 21, 2003, a number of discussions regarding reinstatement of his seniority continued between Linville and the executive board of the local union. (Id.)

Notably, on October 21, 2003, Linville appeared before the executive board to present further documentation in regard to his loss of seniority.  (Defs.' Memo. 4.)  According to the

minutes of the meeting,

> "we the board have decided to again ask Larry to produce check stubs for the weeks of 10-1, 10-8, and 10-15 of 2000.  He states that he will meet with Lisa in payroll and see if she is able to produce the needed documents. The question of Timmy obtaining copies of documents from Larry's file is brought up and Larry says that he will handle this matter with Jana at a letter [sic] date."

(Minutes of Executive Board Meeting, attached as Ex. 10 to Defs.' Memo.)  On January 21, 2004, the local union president, Ken Markham, advised Linville in writing that his "request" regarding his seniority had been "tabled" by the union as the result of Linville's failure to provide requested documentation of check stubs or to authorize release of the documents from the company. (Markham Letter, attached as Ex. 11 to Defs.' Memo.)  Linville had no further discussions with the union until the filing of the lawsuit over eight months later on October 4, 2004.  (Defs.' Memo. 4; Linville Dep. 74-75, attached as Ex. 12 to Defs.' Memo.)

On October 4, 2004, Linville instituted a civil action against the union and Markham in the Circuit Court of Kanawha County.[2]  The complaint does not identify any state or federal

---

[2]While the grievance originally named both the company and the union, it is unclear from the record and briefing whether Linville also brought a separate action against Mayflower.  Often an aggrieved union member will bring a "hybrid action" in which the union member, in the same action, sues both the employer for

law violated by the union, or what, if any, contractual provisions in the CBA that the union violated; rather, it alleges, in somewhat vague fashion, that "plaintiff should have been returned to his seniority position all consistent with the spirit and intent of the various documents and/or agreements between the union and its members and particularly this plaintiff."  (Compl. ¶ 11.)  With respect to damages, Linville contends he "has lost significant income and the protection of seniority, which will to a reasonable degree of probability affect his employment in the future in light of Mayflower Vehicle Systems' plan to downsize its workforce."[3] (Id. ¶ 9.)  Linville seeks compensatory damages, attorney fees, and costs.  (Id. ad damnum clause.)

On February 8, 2005, defendants removed the action to this court asserting the presence of federal question jurisdiction inasmuch as the case involves the interpretation of the CBA and/or the role of the local union in enforcing and administering the CBA.  (Not. of Remov. ¶ 4.)  In defendants'

---

breaching its contractual obligations under the CBA and the union for breaching its duty of fair representation.

[3] From his response, it appears Linville was indeed discharged from his employment sometime after the filing of the complaint. (Pl.'s Resp. Memo. 2.)

motion seeking summary judgment on Linville's claims, defendants contend that (1) to the extent Linville is alleging state law claims in his complaint, those claims are preempted; (2) Linville's complaint should be dismissed because it is time-barred by the six-month statute of limitations for duty of fair representation claims; (3) Linville failed to exhaust all available union remedies; and (4) defendant Markham should be dismissed in his individual capacity.

Linville responded by first noting that he is alleging a violation of Section 301 of the Labor Management Relations Act. As Linville concedes that he is asserting his claims only under § 301 of the LMRA, the court need not address defendants' preemption argument. With respect to the statute of limitations, Linville acknowledges the six month statute of limitations is applicable; however, he contends, in essence, that the statute of limitations could not begin to run prior to final resolution of the grievance which he asserts never occurred as the matter was "tabled" by the executive board.

Addressing defendants' contention that Linville failed to exhaust available union remedies, Linville responds asserting that the union's delay in reaching some final closure from the executive committee, the alleged discriminatory treatment of

Linville, the union's opposition to reinstatement of Linville's seniority, and "other facts to be developed" all mitigate against any further obligation to exhaust.[4]  Linville further contends that "exhaustion to the point of exhaustion has occurred."

Inasmuch as Linville concedes that he is only suing Marcum in his official capacity, it is, accordingly, ORDERED that Linville's claim against Marcum in his individual capacity be, and, it hereby is, dismissed.

II.

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists if, in viewing the record and all

---

[4]Because all discovery was to be completed by September 15, 2005, and Linville's response was filed over two months later on November 18, 2005, Linville's reference to "other facts to be developed" is puzzling.

reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  Id.  The moving party has the burden of showing there is an absence of evidence to support the nonmoving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); Id. at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-moving party.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is not appropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v. Kentucky Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

In reviewing the evidence, a court must neither resolve disputed facts or weigh the evidence, Russell v. Microdyne Corp.,

9

65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  <u>Sosebee v. Murphy</u>, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

### III.

The statute of limitations for suits alleging a breach of the union's duty of fair representation is six months as set forth in Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b).  <u>DelCostello v. International Brotherhood of Teamsters</u>, 462 U.S. 151, 170 (1983).  Questions as to when a federal cause of action accrues and the related question of whether the statute of limitations is tolled are federal questions determined by federal law, with the general rule being that the cause of action accrues when the plaintiff knows or should know that a violation of his rights has occurred.  <u>Cox. v. Stanton</u>, 529 F.2d 47, 50 (4th Cir. 1975).

A.    <u>Running of the Statute of Limitations</u>

As a starting point for its analysis, the court must first determine when Linville discovered the acts constituting the alleged breach of the duty of fair representation.  With respect to a member's fair representation suit against a union, courts have held that the limitations period begins to run when an employee discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.  <u>Barrett v. Ebasco Constructors, Inc.</u>, 868 F.2d 170, 171 (5th Cir. 1989); <u>Wise v. Dallas & Mavis Forwarding Co.</u>, 753 F. Supp. 601, 605 (W.D.N.C. 1991).  Linville concedes that his only complaint with the union is that it was opposed to the reinstatement of his seniority.  (Linville Dep. 7, attached as Ex. 13 to Defs.' Memo.)  On June 18, 2003, nearly two months after his grievance against the company had been denied at step three, the union advised Linville it would no longer pursue his grievance and it could not honor his request to have his seniority reinstated.  Accordingly, on June 18, 2003, Linville had discovered the acts constituting the alleged breach of the duty of fair representation, and the action accrued for statute of limitations purposes at that time.

Linville's assertion that the statute of limitations

could not begin to run until final resolution of the grievance is simply without merit.  Linville's claim against the union is not that it failed to process his grievance to arbitration; rather, it is that the union opposed the reinstatement of his seniority as evidenced by the union's denial at step three and the letter of June 18, 2003, that his grievance against the company would not be pursued by the union.[5]

### B.    Tolling the Statute of Limitations

In duty of fair representation cases, such as this, where the alleged breach of duty arises outside the context of processing a grievance, the member's pursuit of internal union remedies will toll the six month statute of limitations.  <u>Lucas v. Mountain States Telephone & Telgraph</u>, 909 F.2d 419, 421-22 (10th Cir. 1990); <u>Ryder v. Philip Morris, Inc.</u>, 946 F. Supp 422, 433 (E.D.Va. 1996).  However, in order to toll the statute of limitations, the union member must formally invoke an internal union remedy, and mere informal communications, not pursuant to internal union practice, are insufficient to toll the statute of

---

[5] Linville's complaint references the cause of his injury and specifically states that "[a]s a direct and proximate act of these defendants in failing to reinstate the seniority of plaintiff he has lost wages and continues to lose wages..." (Compl. ¶ 12.)  The complaint does not mention that the union failed to process Linville's grievance to arbitration.

limitations.  <u>Ryder</u>, 946 F. Supp. at 433 (member's informal communications with union officials, which demonstrated his "optimistic hopes" that the union would change its decision, were insufficient to toll the statute of limitations as they were simply a general appeal for help, not the invocation of a formal union procedure); <u>Sosbe v. Delco Elect. Div. of General Motors, Corp.</u>, 830 F.2d 83, 87 (7th Cir. 1987)(continued correspondence with the union does not toll the statute of limitations; to hold otherwise, would mean a plaintiff could indefinitely delay resolution of labor disputes by merely bombarding his union with tiresome requests).

  After denial of his grievance at step three, on April 20, 2003, the grievance was closed pursuant to Article 4 of the CBA, and Linville was advised in writing on June 18, 2003, that his grievance would not be further pursued by the union. (Defs.' Memo. 4; Aff. of Ronnie Herdman, ¶ 5, attached as Ex. 14. to Defs.' Memo.)  Accordingly, on June 18, 2003, Linville had to formally invoke an internal union remedy in order to toll the statute of limitations, or, alternatively, bring a civil suit against the union within six months of that date.[6]  Linville

---

[6]If Linville had elected to bring a civil suit against the union on June 18, 2003, he would have had to explain his failure to meet the requirement that he exhaust all union remedies.  In order to excuse the failure to exhaust these remedies, Linville

failed to do either and instead merely engaged in informal "discussions" with the local union seeking reinstatement of his seniority. As Linville explained in his deposition, he just wanted to talk to the executive board members, one member of the union to another, and he further conceded that he did not file an appeal in regard to the denial of his grievance. (Defs.' Memo. 4-5.) Additionally, Linville has offered no evidence to refute defendants' position that the grievance was closed as of April 20, 2003, pursuant to Article 4 of the CBA, nor has he identified any provision in the CBA permitting him to reopen his grievance. See Helms v. Yellow Freight System, Inc., 721 F. Supp. 277, 280 (D.Kan.1989) (absent a specific provision in a collective bargaining agreement authorizing an employee to reopen a grievance, efforts by an employee to do so will not toll the statute of limitations).

Linville's assertion that his "discussions" with the union members prevented the running of the statute of limitations is also without merit. If that were the case, the statute of

---

would have had to demonstrate that the (1) union officials are so hostile that the member could not obtain a fair hearing; (2) the internal union procedures are inadequate in providing full relief; and (3) exhaustion of internal remedies would unreasonably delay the member's opportunity to obtain a judicial hearing on the merits of a claim. Clayton v. International Union, 451 U.S. 679 (1981).

limitations would be entirely under the control of a plaintiff who could indefinitely delay the resolution of the dispute simply by continually making informal requests that the union revisit its decision.  See <u>Sosbe</u>, 830 F.2d at 87.

Linville was thus on notice no later than June 18, 2003, that the union would not pursue his grievance.[7]  Even assuming his discussions with the executive board may have tolled the running of the six-month statute of limitations period in which to file his suit, there were no discussions after he was directed to provide requested documentation on October 21, 2003. When he failed to do so, he was notified on January 21, 2004, that his request was tabled.  The statute would have resumed running by that time, following which he did nothing until filing his lawsuit over eight months later on October 4, 2004.  By that time, the six-month statute had run.  See <u>Keller v. District Lodge No. 19, Intern. Ass'n of Machinists and Aerospace Workers</u>, 882 F. Supp. 560 (S.D. W. Va. 1995) (noting that the six month statute of limitations for a duty of fair representation suit

---

[7]Linville's contention that the union's failure to act on his request was not appealable is contrary to the language of the union's constitution.  Article 33, Section 1 of the union's constitution specifically provides that "[a] failure or refusal to act by any of the foregoing [listing the defendant local union], where it allegedly results in an injury, may also be appealed."

15

began to run when the grievance process had deteriorated to employee's disadvantage).

IV.

The court, accordingly, ORDERS that defendants' motion for summary judgment be, and it hereby is, granted.

The Clerk is directed to forward copies of this memorandum opinion and order to all counsel of record.

DATED: February 1, 2006

_____
John T. Copenhaver, Jr.
United States District Judge